IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jesse James Jeter, ) | C.A. No. 3:10-2832-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION AND ORDER** |
| ) | |
| ) | |
| Palmetto Health Internal Medicine Center, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Plaintiff's *pro se* complaint, filed in this court pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA").

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), DSC, this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On November 14, 2012, the Magistrate Judge issued a Report recommending that Plaintiff's motion for summary judgment be denied, Defendant's motion for summary judgment be granted, and this matter be dismissed with prejudice. The Magistrate Judge advised Plaintiff of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so. Plaintiff filed objections to the Report on November 27, 2012.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by

the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)

After considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court agrees with the Report's conclusion that this matter should be dismissed but concludes that the dismissal should be without prejudice as to any potential medical malpractice claim.

In his Amended Complaint, Plaintiff contends Defendant violated the Americans with Disabilities Act ("ADA") by "committing bias against me based on my race and/or disability." Amd. Compl. at 3 (ECF No. 27). Plaintiff admits that "[a]lthough I have not been excluded from participation in the programs of the [D]efendant, I believe that my civil rights were violated because of bias by reason of my race and/or disability." *Id*. Plaintiff contends that "false claims" were "intentionally infused . . . into my medical records" which will remain in his medical records and resulted in his "current application for disability benefits [being] denied by the Social Security Administration." *Id*. at 4, 8.[1] Plaintiff does not indicate in his Amended Complaint under which section of the ADA he seeks to proceed.

In response to Plaintiff's Amended Complaint, Defendant moves for summary judgment under Title III of the ADA, arguing Plaintiff fails to show that he suffers from a disability as defined

---

[1] Plaintiff has previously applied for and been denied Social Security disability. *See* Resp. at 2 ("This is not the first time that the Defendant . . . has submitted false statements to the Social Security Administration that contributed to the Plaintiff receiving an 'unfavorable' decision on his Social Security Disability claim . . . ."). However, Plaintiff's Supplement to Response to Defendant's Reply indicates that "[m]uch later, at a hearing I however denied the accusations to Judge [Arthur L.] Conover, was found by him to be credible *and was awarded SSI and Medicaid benefits*." ECF No. 73 at 2 (emphasis added).

2

in the ADA. Mem. Supp. at 4 (ECF No. 64).[2] In response to Defendant's motion, Plaintiff maintains his claim is asserted under Title II of the ADA, *see* Resp. to Summ. J. at 2 (ECF No. 67), and that Defendant has not produced evidence that it is not a "public entity," as defined in Title II. Pla's Resp. to Reply at 2 (ECF No. 72).

The Magistrate Judge considered Plaintiff's claim of racial discrimination, assuming it is asserted under 42 U.S.C. § 1983 or "another applicable statute . . . ." Report at 5 (ECF No. 75). The Magistrate Judge concluded that Plaintiff failed to establish this claim; Plaintiff's objections fail to show how the Report erred in this regard. Accordingly, the court adopts the Report's discussion and recommendation relating to Plaintiff's claim of racial discrimination.

As to his claim that he was discriminated against based upon his disability, to establish a violation of Title II of the ADA, Plaintiff must show that he is a qualified individual and was "excluded from participation in, or denied the benefits of, a program or service offered by a public entity, *or subjected to discrimination by that entity*." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d. 474, 499 (4th Cir. 2005) (emphasis added). The Magistrate Judge found that Plaintiff cannot establish a claim under Title II based on his own admission that he was not "excluded from participation in the programs" of Defendant. Amd. Compl. at 2. However, the Magistrate Judge did not fully consider Plaintiff's claim of *discrimination* based upon his disability.

"[C]ourts have construed Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 362 (4th Cir. 2008). In this case, Plaintiff contends he was intentionally discriminated

---

[2] Defendant presumably asserts a defense under Title III of the ADA, versus Title II, as "[a] professional office of a healthcare provider or a hospital is considered to be a public accommodation if the operations of the private entity affect commerce." *Id*. at 3-4 (citing 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104).

against because of his "race and/or disability." Amd. Compl. at 2.

Plaintiff's complaint fails for a variety of reasons. First, Plaintiff fails to establish he is "disabled" within the meaning of the statute. Plaintiff contends that "I believe I am disabled." Amd. Compl. at 2. Yet Plaintiff does not indicate what his "disability" is, nor does he provide evidence of being "disabled" as defined in the ADA. Race is not a "disability" under the ADA or any other statutory scheme.

"To be eligible for any protection under the ADA, an individual must be disabled within the meaning of the Act." *A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 365 (4th Cir. 2008). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Under the third prong of this definition, an individual is disabled if so regarded, whether or not he in fact has a substantially limiting impairment. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 302 (4th Cir.1998).

The evidence submitted in this case indicates that at least one physician has previously diagnosed Plaintiff with rheumatoid arthritis. *See* Exhibit "F" to Pla's Resp. to Dft's M. to Dism (ECF No. 22-2 at 10). Rheumatoid arthritis is a recognized "disability" under the ADA. *See Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 951 n.3 (7th Cir. 2000). However, at least one physician found, during his course of treatment of Plaintiff, that Plaintiff's "overall [medical] presentation was not consistent with a diagnosis of osteoarthritis or rheumatoid arthritis based on my review of his medical records and my examinations of him. Instead, his presentation was consistent with a diagnosis of chronic pain syndrome, likely fibromyalgia." Aff. of Phillip D. Keith, M.D. at ¶ 7 (ECF 64-2).

Even assuming for purposes of this case that Plaintiff has a physical condition which is a

4

"disability" under the ADA, Plaintiff presents no evidence that his condition "substantially limits one or more" of his "major life activities[.]" Accordingly, for this reason, too, Plaintiff's complaint fails.

Assuming, again for purposes of this case only, that Plaintiff is a disabled individual who otherwise qualifies to receive the services of Defendant, Plaintiff has also failed to establish Defendant is a "public entity" as defined by the ADA.[3]

Title II of the ADA defines the term "public entity" to include:

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority.

42 U.S.C. § 12131(1).

Defendant is covered by the South Carolina Solicitation of Charitable Funds Act, S.C. Code §§33-56-10, *et seq.*, which limits actual damages recoverable from and exempts from punitive damages "charitable organizations" in South Carolina. *See* Ans. to Amd. Compl. at 5 (ECF No. Sept. 29, 2011). Accordingly, it does not appear Defendant is a "public entity" as defined by the statute unless it can be shown that Defendant is an "instrumentality" of a state or local government.

Several courts have found that private entities are not transformed into "instrumentalities of the state" under Title II of the ADA based upon contracts with state or local governments to provide services, even in areas of service which are traditionally under exclusive governmental control. *See, e.g., Edison v. Douberly*, 604 F.3d 1307 (11th Cir. 2010) (prison management company not an

---

[3]The Report does not reach the issue of whether Defendant is a "public entity" under Title II.

5

"instrumentality of the state" under Title II); *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006) (private hospital not "public entity" under Title II because not "instrumentality" of a municipality); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (finding that private medical contractor for prison "does not become a 'public entity' under Title II merely b[y] contracting with a governmental entity to provide governmental services."). Moreover, the entity's incorporation under state law does not transform it into a "public entity" under Title II. *Ruffin v. Rockford Memorial Hosp.*, 181 F. App'x 582 (7th Cir. 2006). Accordingly, these courts have concluded that "an instrumentality of the government must be an entity that is either part of or created by the government itself." *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1046 (N.D. Cal. 2012). *But see McNally v. Prison Health Svcs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (treating claim against PHS under Title II as claim against the prison and stating, "PHS's prescription service and the disposition of HIV-positive prisoners' requests for their medication is a program or service of Cumberland County Jail").

In support of his position that Defendant is a public entity, Plaintiff cites a Report and Recommendation entered by another Magistrate Judge of this District, and adopted by this court, which found Defendant to "clearly" be a public entity. *See* Report and Recommendation at 3, *Jeter v. Palmetto Health*, D.S.C. Civil Action No. 3:10-2592-CMC-JRM (ECF No. 8, file Oct. 28, 2010). However, the Report does not cite any facts to support this position, fails to provide the statutory definition of "public entity," and contains no legal analysis of this conclusion. Therefore, the undersigned concludes this finding is insufficient to establish that Defendant is a "public entity" or an "instrumentality" of a public entity in the current case, and finds Plaintiff has failed to establish

Defendant meets the definition of "public entity" under Title II of the ADA.[4]

Even assuming Plaintiff could overcome the above hurdles to the success of his complaint, and assuming Plaintiff has asserted a proper claim under Title II of the ADA, Plaintiff fails to establish that he was discriminated against on the basis of his disability.

A plaintiff seeking recovery for violation of Title II of the ADA must allege that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, *on the basis of his disability*. *Constantine*, 411 F.3d. at 498; *Baird v. Rose*, 192 F.3d 462, 467 70 (4th Cir. 1999).

The evidence submitted in this case indicates that in August 2008, a physician in Washington State prescribed Percocet for Plaintiff's condition(s). *See* Exhibit "F" to Pla's Resp. to Dft's M. to Dism. (ECF No. 22-2 at 10). Plaintiff was to take the Percocet "one to two tablets by mouth daily as needed for severe pain. [N]o more than 3 tabs a day." *Id*.

In March 2009, Plaintiff relocated to South Carolina. On March 23, 2009, Plaintiff signed a "Chronic Pain Contract" with Defendant which indicated that he was to receive Percocet in the same dosage as he had received in Washington State (5 mg-325mg). *See* Exhibit "7" to Pla's Resp. in Opp. to Dft's M. for Summ. J. (ECF No. 67-8 at 2). Plaintiff again signed a "Chronic Pain

---

[4] Even if Defendant is not a "public entity" under Title II, broader definitions of entities engaged in providing "public" service are found in Title III of the ADA (places of public accommodation), and the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq*., which covers "programs or activities" of entities which receive "Federal financial assistance." However, Plaintiff specifically denies that he seeks relief under Title III of the ADA, and even assuming Defendant is covered under the RA, Plaintiff has not asserted a claim under this Act. Additionally, a claim under 42 U.S.C. § 1983 would proceed against a defendant acting "under color of state law," a concept broader than the specific definition of "public entity" found in Title II. *See Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 2046 (N.D. Cal. 2012). However, Plaintiff does not assert a claim under § 1983 but steadfastly contends that "he was denied reasonable accommodations to his medical treatment." Obj. at 5 (ECF No. 79, filed Nov. 27, 2012).

Contract" with Defendant indicating the prescription of the same medication in the same dosage on June 29, 2009. *See* Exhibit "8" to Pla's Resp. in Opp. to Dft's M. for Summ. J. (ECF No. 67-9 at 2). Both the March 23 and June 29 "contracts" indicate Plaintiff was to take Percocet "1 every 6 [hours] [as needed for] pain." ECF. Nos. 67-8, 67-9 at 1. Accordingly, the record establishes Plaintiff was directed to take Percocet more frequently when being treated by Defendant's physicians than in Washington State.

Doctor Phillip D. Keith, M.D., attests that "[t]he clinic [Defendant] was sensitive to the Plaintiff's pre-existing use of Percocet by working with him to wean him from this medication rather than cutting him off 'cold turkey.'" Aff. of Dr. Phillip D. Keith, M.D. at ¶ 10 (ECF No. 64-2). On May 4, 2010, Plaintiff was seen by Dr. Keith for "pain." Exhibit "D" to Pla's Resp. to Dft's M. to Dism (ECF. No. 22-2 at 7). Plaintiff's medical file indicates that Dr. Keith reported Plaintiff "tolerated wean from 90 pills/month all the way down to 30; now, on 30/month, pain control not good. I do believe he has made great progress, will go back to 45 pills/month and continue to slowly wean." *Id*. at 8. The file indicates that Plaintiff had been "[o]n chronic narcotics for 30+ years . . . ." *Id*.

Plaintiff's assertions are that Defendant's agents (the physicians treating him) discriminated against him by placing false information in his medical file maintained by Defendant. However, taking the facts in the light most favorable to Plaintiff, Defendant's agents at most discriminated against Plaintiff because they believed he was a drug abuser, an individual who had "chronically" used "narcotics" for "30+ years."[5] Plaintiff makes no showing that Defendant intentionally discriminated against him *because of* his assumed disability, whether it be rheumatoid arthritis,

---

[5]"Unquestionably, drug addiction constitutes an impairment under the ADA." *A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 367 (4th Cir. 2008). However, throughout this case, Plaintiff disavows addiction as his disabling condition.

osteoarthritis, or fibromyaligia.

Finally, the court notes that physicians involved in treating Plaintiff had a different medical judgment than the physicians in Washington State regarding the condition(s) from which Plaintiff suffers, and how best to treat Plaintiff's condition(s). Defendant did not exclude Plaintiff from participation in its programs or provision of medical care, nor can Plaintiff establish that a documented difference in medical judgment amounts to discrimination under the ADA in this case. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *see also Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493-94 (10th Cir. 1992) ("the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'") (quoting *United States v. University Hospital, State University of New York at Stony Brook*, 729 F.2d 144, 156 (2d Cir. 1984)). "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. University Hospital, State University of New York at Stony Brook*, 729 F.2d 144, 157 (2d Cir. 1984).

### Medical Malpractice

Defendant seeks summary judgment based upon a perceived claim of medical malpractice. Plaintiff argues in opposition and again in his objections that his complaint does not assert a claim for medical malpractice. The undersigned agrees, and therefore dismisses any purported claim for medical malpractice without prejudice.

### Conclusion

Plaintiff's motion for summary judgment is denied, Defendant's motion for summary judgment is granted except as to any alleged claim for medical malpractice, and this matter is

dismissed with prejudice except as noted above.

      **IT IS SO ORDERED.**

                                              s/ Cameron McGowan Currie
                                              CAMERON MCGOWAN CURRIE
                                              UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 14, 2012